IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MERIEL D., )
)
        Plaintiff, )
)
v. ) 1:23CV815
)
MARTIN J. O'MALLEY,[1] )
Commissioner of Social Security, )
)
        Defendant. )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Meriel D. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 1, 2021, alleging a disability onset date of May 22, 2021. (Tr. at 18, 178-79)[2] Her application was denied initially

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

(Tr. at 74-80, 89-93) and upon reconsideration (Tr. at 81-88, 95-99). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 105-06.) On January 10, 2023, Plaintiff, along with her attorney, attended the subsequent hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 18.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and, on July 24, 2023, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since May 22, 2021, her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 20.) At step two, the ALJ further determined that Plaintiff suffered from two severe impairments:

> obesity [and] lymphedema, worse on the left leg[.]

(Tr. at 21.) The ALJ found at step three that neither of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 21-22.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, or crouch; [and]

5

never crawl. [She] can occasionally push or pull foot control[s] with the bilateral lower feet [sic]; [she] needs the option to sit/stand every half hour on task.

(Tr. at 22.) At step four of the analysis, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 25.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 25-26.)

Plaintiff now contends that, in assessing her RFC, the ALJ "erred in his treatment of the evidence regarding Plaintiff's massive left leg lymphedema" and in "failing to include an accommodation for leg elevation in the . . . RFC assessment." (Pl.'s Br. [Doc. #10] at 1.) In terms of function-by-function analysis, she specifically argues that the ALJ's decision fails to provide an "accurate and logical bridge" from the evidence about Plaintiff's lymphedema to the RFC assessment. (Pl.'s Br. at 5) (citing Woods v. Berryhill, 888 F3d 686, 694 (4th Cir 2018)).

As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence

6

(e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods, 888 F.3d at 694.

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)(quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Id. at 637.

Here, Plaintiff contends that the ALJ's failure to include leg elevation among the RFC limitations relating to Plaintiff's left leg lymphedema—or to sufficiently explain the absence of such a limitation from the RFC assessment—renders his decision unsupported by substantial evidence. Defendant counters that the ALJ sufficiently explained his reasons for discounting the need for additional restrictions, including left foot elevation. In particular, Defendant argues that the ALJ explained that the record as a whole, including the treatment notes, objective testing and examination, and medical opinion evidence, reflected that Plaintiff

7

could still perform light work, and as part of that analysis the ALJ found that the record failed to substantiate Plaintiff's subjective complaints that she needed to elevate her leg throughout the workday. (Tr. at 25, 26.)

With respect to the ALJ's evaluation of Plaintiff's allegations regarding her symptoms, under the applicable regulations the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

8

Arakas, 983 F.3d at 95. Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her symptoms, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
> (ii) The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, Plaintiff cited her lymphedema as the primary cause of her disability. Specifically, as set out in the ALJ's decision,

> [Plaintiff] testified [that] she is unable to work due to lymphedema that particularly affects the left leg, with involvement of the right leg to a lesser degree. Associated issues include progressively worsening swelling and skin breakdown. Functional and other limitations resulting from the lymphedema have been difficulty standing as that increased the swelling, and while she can sit for brief periods of time, this also caused pain and swelling. The most helpful position is to elevate her leg. [Plaintiff] also has trouble squatting, kneeling, bending, and twisting. Further complicating these issues has been her increasing weight. [Plaintiff] sought limited medical treatment due to lack of

9

health insurance and income. She does some household chores, at her own pace.

(Tr. at 22.)

The ALJ ultimately found that Plaintiff's "statement concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and concluded that Plaintiff's "subjective complaints and alleged limitations are not persuasive." (Tr. at 23, 25.) In doing so, the ALJ relied, in part, on Plaintiff's extremely limited treatment history. As evidenced by in the record and noted at Plaintiff's hearing, she saw no medical providers between May 2016 and her consultative examination in October 2021. (Tr. at 23.) After the consultative examination, she did not see any provider until she established care at Novant Health in November 2022, shortly before the hearing. (Tr. at 24.)

The ALJ considered Plaintiff's assertions that she had no medical insurance and could not otherwise afford treatment, but explained that Plaintiff "has not presented convincing evidence that she could not afford treatment and that she could not obtain free treatment in the community." (Tr. at 23.) In making this finding, the ALJ acknowledged that the inability to afford treatment may be a justifiable cause for failing to obtain treatment. (Tr. at 23.) As explained by the Fourth Circuit, "[a] claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).

Plaintiff contends that the ALJ merely "paid lip service to this principle," and went on to punish Plaintiff for her poverty, despite "multiple statements in the record" indicating that Plaintiff "lacks insurance and funds to afford specialized treatment." (Pl.'s Br. at 6.) However, the ALJ did not rely on Plaintiff's failure to seek specialized treatment, but rather her failure to seek medical treatment of <u>any</u> kind for more than five years. (Tr. at 23.) Moreover, neither Plaintiff nor her attorney indicated that Plaintiff sought free or reduced cost medical care during this time or provided reasons for her failure to do so.[5] Ultimately, the Court cannot conclude that the ALJ unfairly penalized Plaintiff for her failure to seek treatment or that the consideration of Plaintiff's sparse treatment history served as an improper consideration when analyzing Plaintiff's subjective statements and overall need for leg elevation.

In addition, in evaluating Plaintiff's subjective complaints, the ALJ also found it "significant that although [Plaintiff] has had minimal treatment, none of [her] treating practitioners has placed limitations on [her] or stated that she is unable to work." (Tr. at 23.) The ALJ summarized the treatment notes from Plaintiff's two treating providers: a record from 2016 for complaints of left leg pain and swelling, with the examination reflecting nonpitting edema in the bilateral lower extremities, no neurological deficits, an ultrasound negative for deep vein thrombosis, and a recommended treatment of a course of Prednisone (Tr. at 23, 242), and a November 2022 examination at Novant Health, where Plaintiff

---

[5] Indeed, a treatment note post-dating the ALJ's decision indicates that after visiting Novant Health in January 2023, Plaintiff was approved for charity care that would cover treatment and imaging costs ordered by Plaintiff's primary care provider for six months. (Tr. at 65.) Thus, it was relatively straightforward for Plaintiff to obtain medical charity care once she tried. These later records were not exhibited by the Appeals Council based on the determination that they did "not show a reasonable probability that it would change the outcome of the decision" (Tr. at 2), and Plaintiff does not challenge that determination.

11

presented with bilateral lymphedema with leg swelling and morbid obesity, but was in no acute distress, with no other objective findings (Tr. at 24, 256.)

Plaintiff argues that the consultative examiner, Dr. Stephen Burgess, did, in fact, recommend leg elevation. In pertinent part, Dr. Burgess wrote that:

> [Plaintiff] is attempting to keep [her left leg] in an elevated position and any work that she does with the leg in a dependent position, standing or sitting for protracted periods, would cause worsening of this and have her run the risk of complications.

(Tr. at 250.) However, the ALJ ultimately accounted for Plaintiff's inability to stand or sit for protracted periods by including a sit/stand option in the RFC assessment. (Tr. at 22, 24.) This is consistent with Plaintiff's testimony that she could stand 30 minutes and would then need to sit. (Tr. at 43.) Moreover, Plaintiff herself testified that sitting without elevating her legs did not worsen her lymphedema. Significantly, Plaintiff testified, in response to a question from her own attorney, that her leg swelling did not get any worse with prolonged sitting even if her legs were not elevated. Specifically, she stated that the swelling "stay[s] like it is." (Tr. at 43.) "It doesn't get any better, you know, depending on how long, you know, I'm sitting there but it pretty much stays this size." (Tr. at 43.)[6]

As a final matter, Plaintiff avoids any mention of the State agency medical consultants' assessments in her brief. These medical professionals, Dr. Harry Gallis and Dr. Edward Woods, considered not only Dr. Burgess' examination, but also Plaintiff's subjective statements, other medical evidence, and the record as a whole when providing their opinions.

---

[6] The Court also notes that to the extent that Plaintiff is challenging the ALJ's finding that "none of [Plaintiff's] treating practitioners has placed limitations on [her] or stated that she is unable to work" (Tr. at 23), Dr. Burgess was not a "treating practitioner." Moreover, the ALJ considered the consultative examination at length, and noted that the examination reflected that Plaintiff had a steady, wide-based gait and normal stance, was stable at station, and appeared comfortable sitting, with lymphedema but minimal pain and 5/5 strength. (Tr. at 23.)

Case 1:23-cv-00815-JEP   Document 13   Filed 09/27/24   Page 12 of 14

Dr. Gallis and Dr. Woods both found that Plaintiff's lymphedema, combined with her morbid obesity, would restrict her to light work with occasional postural activities, and neither included leg elevation among Plaintiff's limitations. (Tr. at 78-79, 84-85.) The ALJ found these opinions persuasive. (Tr. at 24.) The ALJ also expressly relied on "the observations of treating sources in the medical records" and Plaintiff's "own statements about her activities and abilities" as set out above. (Tr. at 25.)

Overall, as instructed by the regulations, the ALJ considered the entire case record and explained the reasons for deviating from Plaintiff's statements regarding the impact of her lymphedema on her ability to work, and specifically concluded that the evidence did not provide a credible basis for a limitation requiring that Plaintiff elevate her leg to waist level. (Tr. at 26.) Whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). Here, the ALJ reviewed the medical evidence, the opinion evidence, Plaintiff's testimony, and the record, and sufficiently explained his analysis of Plaintiff's subjective complaints. While Plaintiff disagrees with the ALJ's determination, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets

13

and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ provided sufficient analysis to allow the Court to follow his reasoning, and the ALJ relied on Plaintiff's testimony, the treatment history, the available examination records, and the opinions of Dr. Gallis and Dr. Woods, which provides substantial evidence to support the ALJ's determination. Accordingly, the Court finds no basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #10] is DENIED, that First Defendant's Dispositive Brief [Doc. #12] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 27th day of September, 2024.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge